IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY KOHLBRECHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-02975-E |
| | § | |
| NMVT MOTORS, LLC d/b/a NISSAN MCKINNEY, NISSAN MOTOR ACCEPTANCE CORPORATION, ALLY BANK, CITIZEN AUTO FINANCE, INC., FIFTH THIRD BANK, TD AUTO FINANCE, LLC, and CHASE AUTO FINANCE CORP., | § § § § § § § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Partially Opposed Motion to Compel Arbitration and Motion to Abate (Doc. No. 52). Although the motion was filed by defendant NMVT Motors, LLC d/b/a Nissan of McKinney (NMVT), it appears also to be filed on behalf of defendants Fifth Third Bank, TD Auto Finance, LLC, and JP Morgan Chase Bank, NA (collectively, the NMTV Defendants), all of which are represented by NMVT's counsel. Accordingly, for purposes of this Order, the Court treats the NMVT Defendants as having joined in the motion.[1] After considering the motion, the parties' briefing, and the applicable law, the Court **GRANTS in part** and **DENIES in part** the motion for the following reasons.

---

[1] The three remaining defendants, Nissan Motor Acceptance Corporation, Ally Bank, and Citizens Automobile Finance, Inc., have not joined in the motion or otherwise sought to compel arbitration in this case.

1

BACKGROUND

Kohlbrecher executed a Retail Installment Sales Contract to purchase a Nissan Titan from NMVT. Under the contract, Kohlbrecher "purchase[d] the vehicle on credit" with $57,718.01 of the total $69,882.48 sales price to be financed. The contract also includes an arbitration provision, which states in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. No. 52-1).

According to his first amended complaint, Kohlbrecher provided NMVT his monthly income and social security number so it could secure financing for the purchase, but he was never presented with, or asked to sign, a credit application. Kohlbrecher alleges NMVT prepared a falsified credit application, intentionally overstating his income and forging his signature, and sent the application to the remaining defendants, all of which, including the NMVT Defendants, are finance companies. The finance companies then obtained Kohlbrecher's credit report, and Kohlbrecher alleges the multiple inquiries "pulled down [his] credit score and/or reflected poorly on his credit history." Kohlbrecher complains neither NMVT nor the finance companies, which he alleges are NMVT's "principals," had authority to access his credit report and asserts claims against each defendant for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, invasion of privacy, and violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE § 17.46.

2

NMVT's motion urges the Court to compel arbitration of Kohlbrecher's claims against both it and the NMVT Defendants. Kohlbrecher agrees his claims against NMVT are subject to arbitration, but he opposes arbitrating his claims against the NMVT Defendants.

LEGAL STANDARD

Under the Federal Arbitration Act (FAA), federal court litigants may seek orders to compel arbitration as provided under written agreements to arbitrate and to stay the trial of an action involving an issue referable to arbitration. 9 U.S.C. §§ 3, 4; *Halliburton Energy Svcs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 n.3 (5th Cir. 2019). To determine whether parties have agreed to arbitrate, courts apply the contract law of the state that governs the agreement. *Id*. at 530.

Under Texas law, which applies here, a party can compel arbitration by establishing (1) there is a valid agreement to arbitrate between the parties; and (2) the dispute in question falls within the scope of that arbitration agreement. *Halliburton Energy Svcs., Inc.*, 921 F.3d at 530. To determine whether there is a valid arbitration agreement between the parties, a court looks to the parties' intent as expressed in the contract. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). An obligation to arbitrate attaches to parties who have personally signed a written arbitration agreement, but principles of contract and agency law also may require arbitration with non-signatories under any of six theories: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Id*.; *see also Halliburton Energy Svcs.*, 921 F.3d at 530–31. The party seeking to compel arbitration need only prove the existence of an

agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. Appx. 310, 315 (5th Cir. 2012) (per curiam).

ANALYSIS

As nonsignatories seeking to compel arbitration, the NMVT Defendants have the burden to establish a valid arbitration agreement and show, by rules of law or equity, that they have the right to enforce it. *See Inland Sea, Inc. v. Castro*, 420 S.W.3d 55, 58 (Tex. App.—El Paso 2012, pet. denied). Here, they assert both (1) "the plain language of the arbitration provision indicates [Kohlbrecher] agreed to arbitrate his claims against [the finance companies]" and, (2) Kohlbrecher "is equitably estopped from arguing that his claims against [the finance companies] are subject to the arbitration provision."

The arbitration provision clearly is a valid agreement between the signatories, Kohlbrecher and NMVT, manifesting their intent to resolve "any claim or dispute . . . aris[ing] out of or relat[ing] to [the] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." The finance companies are not signatories to the contract. NMVT did not sign the contract as the finance companies' agent; nor is there any evidence that the finance companies are NMVT's "employees, agents, successors or assigns." Accordingly, the Court disagrees with NMVT's position that the "plain language" of the arbitration provision requires Kohlbrecher to arbitrate his claims against the finance companies.

NMVT also contends Kohlbrecher is equitably estopped from arguing his claims are not subject to arbitration because he "raises allegations of substantially interdependent and

4

concerted misconduct" by both NMVT and the finance companies. Although the Fifth Circuit has applied the "concerted misconduct" theory of equitable estoppel, *see Grigson v. Creative Artists Agency LLC*, 210 F.3d 524 (5th Cir. 2000), the Texas Supreme Court subsequently declined to adopt the theory. *See Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610–11 ns. 4 & 5 (2016); *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192–95 (2007). Because this Court must apply Texas law to determine whether the parties agreed to arbitrate their disputes, *see Halliburton Energy Svcs.*, 921 F.3d at 530, the NMVT Defendants cannot rely on the "concerted misconduct" theory to compel Kohlbrecher to arbitrate his claims against them in this case.

Finding a valid agreement to arbitrate between Kohlbrecher and NMVT, the Court must consider whether Kohlbrecher's claims fall within the scope of the agreement. *See Halliburton Energy Svcs.*, 921 F.3d at 530. The agreement provides that it applies to claims "aris[ing] out of or relat[ing] to [Kohlbrecher's] credit application . . . or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." Because all of Kohlbrecher's claims arise from NMVT's conduct in submitting a false and forged credit application to the finance companies and their subsequent conduct in accessing Kohlbrecher's credit report, the Court finds the claims fall within the scope of the arbitration provision. Indeed, Kohlbrecher agrees his claims against NMVT are subject to arbitration. Accordingly, Kohlbrecher must arbitrate his claims against NMVT, and the Court must stay litigation of these claims pending that arbitration. *See* 9 U.S.C. §§ 3, 4.

Because the Court has determined that Kohlbrecher's claims against NMVT are subject to arbitration, the Court also must determine whether to stay this action as to Kohlbrecher's claims against the finance companies as well. Courts have applied FAA Section 3 to stay an action as to nonarbitrable claims if (1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are "inherently inseparable," and (3) the litigation has a "critical impact" on the arbitration. *Rainier DSC 1, L.L.C. v. Rainer Capital Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983) ("In some cases, . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

Here the claims against the finance companies involve the same operative facts and are largely identical to, and alleged collectively with, the claims asserted against NMVT. Both the arbitration and litigation concern central questions related to the defendants' authority to obtain Kohlbrecher's credit report and the cumulative effect of their doing so. Finally, resolution of the litigation could have a critical impact on the arbitration proceeding in the event the Court were to determine these same issues before an arbitrator can address them. Under these circumstances, the Court concludes it should stay all further proceedings in this case pending resolution of the arbitration.

CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendant's Partially Opposed Motion to Compel Arbitration and Motion to Abate (Doc. No. 52). Kohlbrecher and NMVT

shall arbitrate Kohlbrecher's claims against NMVT.  This action is **STAYED**, and the Clerk of the Court is instructed to administratively close this case pending arbitration.  The parties are **ORDERED** to provide a joint status update every six months, with the first report due on **July 14, 2020**.

**SO ORDERED.**

Signed January 14, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE